IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYNETTE WILSON, Individually and as Administratrix of the Estate of RAUL BARRIERA, deceased, | ) ) ) ) | No. 07 C 1682 |
| Plaintiff, | ) ) ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) ) ) | |
| The CITY OF CHICAGO, et. al., | ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

On March 27, 2007, Lynette Wilson filed a complaint against the City of Chicago and three Chicago police officers alleging her son's death was the result of: (1) the defendants' use of excessive force and; (2) the City's failure to properly train its police officers. The City has moved to bifurcate Wilson's claims against the City and to stay discovery and trial on those issues. For the reasons set forth below, the City's motion is DENIED.

### I. Factual Background

The following facts are taken from Lynette Wilson's Complaint. Wilson is the biological mother of Raul Adan Barriera. At the time of his death, Barriera was 21 years old and resided at 1630 N. Tripp Ave., Chicago, Illinois. Defendants Andrew Hurman, David Cummens and Donald Jerome were all Chicago Police officers during the relevant period.

1

On February 28, 2007, Raul Barriera—who was diagnosed as schizophrenic and had previously attempted suicide—barricaded himself in his bedroom and refused to leave. Fearing for her son's safety, Wilson dialed 911 and told the operator her son was mentally ill, and she needed assistance. When the police arrived, they attempted to talk Barriera out of his room but were unsuccessful. Eventually, the police forced open the bedroom door and fired their tasers at Barriera, striking him four times.[1] Officer Hurman then fired his weapon, striking Barriera twice. Barriera was pronounced dead the next day. According to Wilson, the police were unprovoked and had no reason to use their weapons.

Wilson's Complaint contains three claims premised on 42 U.S.C. § 1983: violation of the 4th Amendment; conspiracy to violate the 14th Amendment and; failure to train. The Complaint also includes three state law claims: wrongful death; an action under the Illinois Survival statute and; respondeat superior against the City of Chicago.

## II. Analysis

In *Monell v. Dep't of Soc. Serv. Of the City of New York*, the Supreme Court held that a local government can only be sued under 42 U.S.C. § 1983 where "execution of a government's policy or custom … inflicts the injury." 436 U.S. 658, 694 (1978). Thus, Wilson claims that although the officers' use of excessive force caused her son's death, a flawed municipal policy set the stage for the tragic events: "It was the policy, practice or custom of the defendant, City to inadequately supervise and train its police officers, including the defendant officers, on how to properly arrest or detain mentally ill persons

---

[1] According to the Complaint, a taser is a conducted energy weapon that utilizes compressed nitrogen to shoot two small probes up to 21 feet. The probes are connected to the weapon by high voltage insulated wire. When the probes make contact with the target, the taser transmits powerful electrical pulses along the wires and into the body of the target causing the target to lose muscle control. (Am. Compl. § 14).

2

without violating their constitutional rights." (Am. Compl. ¶ 21). Specifically, Wilson claims fewer than 2% of Chicago police officers have been trained to handle mentally ill arrestees and that none of the responding officers had been trained in this area. Therefore, Wilson brings individual claims against the responding officers (excessive force) and broad systemic claims (failure to train) against the City.

In response, the City has moved to bifurcate Wilson's claims against the officers from her *Monell* claims. Federal Rule of Civil Procedure 42(b) allows courts to separate claims where bifurcation would avoid prejudice or promote efficiency. The City argues bifurcation is appropriate because Wilson can not succeed in her claims against the City unless she first proves that the responding officers inflicted a constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[if] a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"). It is now common practice for the City to ask—and for Courts to allow—a delay in the assessment of the challenged municipal policy until after the plaintiff proves the officers inflicted a constitutional injury. *See, e.g., Myatt v. City of Chicago*, 816 F. Supp. 1259, 1263-64 (N.D. Ill. 1992); *Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007); *Jones v. City of Chicago*, 1999 U.S. Dist. LEXIS 3358, 1999 WL 160228 at *2-3 (N.D. Ill. Mar. 10, 1999); *Keys v. City of Harvey*, 1996 U.S. Dist. LEXIS 805, 1996 WL 34422 at *2-3 (N.D. Ill. Jan. 26, 1996). Here, however, the City goes well beyond asking for a mere delay in the examination of its training policies.

The City has agreed to the entry of judgment against it for compensatory damages and attorney fees if the Court finds that the responding officers violated Wilson's

3

constitutional rights. (Mot. to Bifurcate Ex. D). This stipulation—coupled with the motion to bifurcate—will short circuit any discovery into the City's training procedures regarding mentally ill detainees. The purpose of bifurcation, however, is not to spare the City the embarrassment of litigating potential training deficiencies. The City argues it has nothing to hide, and simply seeks bifurcation in order to avoid the overwhelming burden associated with *Monell* discovery. The City's concerns, however, are misguided.

The Court is well aware that *Monell* discovery can represent a significant expenditure of time. *See, e.g., Elrod v. City of Chicago*, 06 C 2505 & 07 C 203, 2007 U.S. Dist. LEXIS 80941, 2007 WL 3241352, * 1 (N.D. Ill. Nov. 1, 2007) (allowing bifurcation and noting "there is no doubt that including the *Monell* claims pleaded by Plaintiffs would add to the length and complexity" of the case). For example, in *Lopez v. City of Chicago*, the court denied the City's motion to bifurcate but stayed discovery with respect to the *Monell* claims. No. 01 C 1823, 2002 U.S. Dist. LEXIS 3458, 2002 WL 335346, at *3 (N.D. Ill. Mar. 1, 2002). The court noted that the plaintiff's *Monell* claims were extremely generic, which in turn caused his discovery requests to be far-reaching and unfocused. *Id.* at *1. Accordingly, the court found it would be burdensome for the City to respond to such broad document requests before fact discovery regarding the individual officers narrowed the issues.

By contrast, Wilson's Complaint does not present a run-of-the-mill failure to train allegation. Indeed, Wilson alleges that the City is deficient in a very specific area: training police to deal with mentally ill persons. The Court is confident that Wilson's *Monell* claim is narrowly tailored enough that discovery on these issues will not be a significant burden. Wilson's son was diagnosed with schizophrenia and died during an

4

altercation with the police. Wilson now seeks to uncover the details of how the City trains its officers to interact with people like her son. There is no reason to believe Wilson's *Monell* discovery will be a fishing expedition to unearth hidden claims in order to hit the § 1983 jackpot.

Wilson asserts an additional reason why consideration of her claim should not be delayed via bifurcation: a successful *Monell* claim can expose detrimental municipal polices, thus providing an important social benefit. In response, the City contends Wilson's *Monell* claim—even if successful—would have little to no meaningful impact because she only seeks monetary damages. The City's argument is unpersuasive. In *City of Riverside v. Rivera*, Justice Brennan discussed monetary relief in the context of civil rights cases:

> As an initial matter, we reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms ...
>
> In addition, the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future. This deterrent effect is particularly evident in the area of individual police misconduct, where injunctive relief generally is unavailable.

477 U.S. 561 (1986). More than two decades later, Justice Brennan's words still ring true. For example, in *Medina v. City of Chicago*, the City moved to bifurcate a *Monell* claim challenging police training policies regarding narcotics infractions. 100 F.Supp. 2d 893, 894 (N.D. Ill. 2000). In denying the motion, Judge Kennelly noted:

> [there are] other non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues (or is permitted to pursue) only the individual officer. Deterrence of future misconduct is a proper object of our system of tort liability, and § 1983 claims are a form of tort liability.

5

*Id.* at 896. Moreover, a "judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than judgment naming the municipality itself as responsible based on its policies and customs." *Id.* Simply put, the fact that a plaintiff seeks monetary relief will not preclude a successful *Monell* claim from conferring "non-economic benefits" such as deterring police misconduct or shining the light on detrimental municipal policies.

The City makes one last argument: the Court should exercise judicial restraint and allow the legislative branch to effectuate change in municipal policy, not individual litigants. In particular, the City asserts Section 1983 does not grant courts "a roving commission to root out and correct whatever municipal transgression they might discover" and that the Court's only task is "to adjudicate discrete disputes." (Reply Br. at 5-6, quoting *Carter v. Morris*, 164 F.3d 215, 218-19 (4th Cir. 1999)). The Court appreciates the City's concerns. But, a separation of powers argument has no applicability to this case. Lynette Wilson's mentally ill son was killed during an incident with the police. The three responding officers admit they had not been trained to handle mentally ill detainees. (Defs. Hurman, Cummens, and Jerome's Answer to Am. Compl. ¶19). The Court did not "rove" the City looking for a plaintiff to challenge police training procedures. Wilson came to the Court with a specific grievance regarding a specific policy in a discrete area; and where a plaintiff brings such a claim—and the allegations are narrowly tailored and would not cause an undue burden during discovery—the Court will not allow bifurcation to be used as a tool for obfuscation.

### III. CONCLUSION

6

The Court finds that the prejudice, efficiency and economy rationales do not weigh in favor of bifurcation. The City is correct, in most cases, *Monell* claims add substantial time and expense. But, there is no rule or case law *requiring* bifurcation of all *Monell* claims. Thus, the decision is left to the sound discretion of the Court. *McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861, 870 (7th Cir. 1994) (finding that the district court did not abuse its discretion in denying a motion to bifurcate where the same evidence would be used in both stages of the proceedings). Here, Wilson's *Monell* claim is narrowly tailored and aimed at an exceedingly specific area of police procedure. If the City has no desire to discuss or litigate its policies in this area, then the proper tack is to pursue settlement, not move for bifurcation.

For the reasons set forth in the preceding analysis, the City's motion for bifurcation and a stay of discovery is DENIED.

IT IS SO ORDERED.

7/24/08
Dated

The Honorable William J. Hibbler
United States District Court