## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LYNETTE WILSON, Individually and as Administrator of the Estate of RAUL ADAN BARRIERA, deceased,     Plaintiff(s),   v. The CITY OF CHICAGO, a Municipal Corporation, OFFICERS ANDREW HURMAN, DAVID CUMMENS, and DON JEROME     Defendants. | No. 07 CV 1682  Judge Joan H. Lefkow |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Lynette Wilson ("Wilson"), has filed a post-trial motion seeking a new trial and judgment as a matter of law after a jury returned a verdict in favor of the City of Chicago ("City") and Chicago Police Department officers Andrew Hurman ("Hurman"), David Cummens ("Cummens"), and Sergeant Don Jerome ("Jerome") (the three individual defendants will be referred to as "defendant officers"). [Dkt. 190.] Wilson claimed that defendant officers used unreasonable and unjustifiable force against her son, Raul Adan Barriera ("Barriera"), on February 28, 2007 rendering them liable for damages under 42 U.S.C. § 1983, the Illinois wrongful death statute (740 ILL. COMP. STAT. 180/1), and the Illinois survival statute (755 ILL. COMP. STAT. 5/27-6). Wilson claimed that the City violated Barriera's Fourth Amendment rights by failing to train defendant officers on how to arrest or detain mentally ill persons and was additionally liable for the state law claims under the doctrine of *respondeat superior*.[1] The

---

[1] Wilson nonsuited her claims for conspiracy and failure to intervene.

case proceeded to trial from October 18, 2011 through October 27, 2011 before the late

Honorable William J. Hibbler.[2]  The jury returned a verdict in favor of defendants on all counts.

## BACKGROUND

This case stems from an incident that occurred on February 28, 2007, at 1630

North Tripp Avenue in Chicago, Illinois.  That afternoon, Barriera, who was 21 years old, locked

himself in his bedroom and refused to come out.  Wilson worried that Barriera would hurt

himself so she called 911 for assistance.  Wilson told the 911 operator that Barriera suffered

from schizophrenia and was currently on medication.  She further explained that Barriera refused

to come out of his room or let anyone into his room, and she needed help.  Initially, Chicago Fire

Department paramedics responded to the scene and, shortly thereafter Hurman, Cummens, and

Jerome arrived.

The paramedics and the defendant officers attempted to persuade Barriera to leave his

room.  Barriera, however, refused to come out.  The defendant officers were able to open

Barriera's bedroom door to speak with Barriera.   The parties dispute what happened next.

Wilson's witnesses maintained that Barriera posed no physical threat to the responding law

enforcement officers, while defendant officers testified that Barriera was holding a knife and

made an aggressive movement towards them.  Jerome subsequently deployed his Taser gun,

striking Barriera in the chest.  Moments later Hurman discharged his firearm at Barriera, striking

him twice.  On March 1, 2007, Barriera died from injuries sustained during the incident.

In her motion for a new trial, Wilson argues that the court erred by (1) allowing

testimony regarding Barriera's drug and alcohol use; (2) denying her motions *in limine* regarding

_____

[2]  Judge Hibbler died on March 19, 2012 and the case was reassigned to this court.

post-shooting facts; (3) precluding Wilson from cross-examining Jerome using tactical response

reports ("TRRs") and about potential disciplinary repercussions; (4) using certain language in

front of the jury after granting judgment as a matter of law in favor of Cummens; and (5)

incorrectly instructing the jury regarding wrongful death and willful and wanton conduct. These

errors, Wilson maintains, warrant a new trial. Wilson also contends that the court erred when

denying her motion for a judgment as a matter of law on her wrongful death claim.

## ANALYSIS

### I.      Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1) states that "[t]he court may, on motion, grant a

new trial on all or some of the issues–and to any party–as follows: (A) after a jury trial, for any

reasons for which a new trial has heretofore been granted in an action at law in federal court[.]"

When deciding whether to grant a new trial, the court "must determine whether the verdict is

against the weight of the evidence, the damages are excessive [or insufficient], or if for other

reasons the trial was not fair to the moving party." *Schick* v. *Ill. Dep't of Human Servs.*, 307

F.3d 605, 611 (7th Cir. 2002) (brackets in original) (internal quotation marks omitted). A court

should grant a new trial based on the erroneous admission or exclusion of evidence only if that

error "had a substantial influence over the jury, and the result reached was inconsistent with

substantial justice." *Agushi* v. *Duerr*, 196 F.3d 754, 759 (7th Cir. 1999) (internal quotation

marks omitted).

### A.      Testimony Regarding Barriera's Purported Drug and Alcohol Use

Wilson called Dr. Sheldon Greenberg and Dr. Ponnie Arunkumar as witnesses in her

case-in-chief. Dr. Greenberg was Barriera's psychiatrist, and Dr. Arunkumar was the medical

3

examiner who performed Barriera's autopsy.  Wilson maintains that the court erred by allowing

the defendants to cross-examine Dr. Greenberg and Dr. Arunkumar regarding Barriera's prior

drug and alcohol abuse.

### 1)        Cross-Examination of Dr. Greenberg

Dr. Greenberg maintained notes of his meetings with Barriera, some of which reflected

Barriera's having discussed prior drug and alcohol use.  The toxicology reports showed no signs

of marijuana or alcohol use on the day of the incident, and Wilson made an oral motion *in limine*

before Dr. Greenberg testified arguing that inquiry into Barriera's prior drug and alcohol use

would lead to the admission of improper character evidence under Federal Rule of Evidence

404(b) and was unduly prejudicial under Rule 403.  The court denied Wilson's motion and

allowed defendants to inquire about Barriera's past drug and alcohol use.[3]

During Dr. Greenberg's direct examination, Wilson's counsel fronted this issue, and Dr.

Greenberg testified that Barriera experienced a significant diminution of symptoms when he

refrained from drug and alcohol use.  Dr. Greenberg explained that there was no direct evidence

that Barriera became violent when consuming alcohol but acknowledged the possibility that

alcohol use could "have a disinhibiting effect where he might become more upset or easily

irritated with others."  (Dkt. 190-2, 10/19/2011 Tr. 36.)  On cross-examination, Dr. Greenberg

denied that drugs or alcohol affected Barriera at the time of the incident and opined that

---

[3] Defendants argue that the court's ruling was not definitive such that Wilson had to object during Dr. Greenberg's trial testimony to preserve her motion *in limine* (which she did not do).  "Only arguments that were actually presented to the district court before trial are preserved for appeal–and then only if the district judge came to a definitive conclusion."  *Wilson* v. *Williams*, 182 F.3d 562, 567 (7th Cir. 1999).  The court's *in limine* ruling was definitive in that it allowed questioning of Dr. Greenberg regarding Barriera's prior alcohol and drug use.  Wilson thus did not need to object at trial to preserve this issue for review.

Barriera's drug and alcohol use would not have led to a "significant exacerbation of symptoms." (*Id*. at 44.)  Dr. Greenberg conceded, though, that "significant binge drinking of alcohol or severe marijuana intoxication . . . could be an exacerbation of symptoms." (*Id*.)  He further testified that (1) in August 2003, Barriera refused treatment for chemical dependency; (2) in April 2005, Barriera stated that he continued to consume beer with vodka and had been in a fight related to his drinking; (3) in June 2006, Barriera consumed alcohol and had a blackout episode;[4] and (4) in August 2006, Barriera admitted that he continued to drink and would occasionally binge on alcohol.  (*Id*. 44, 46, 57–58.)  During redirect examination, Dr. Greenberg testified that "one beer" would not have a significant effect on a schizophrenic and that there was no evidence that Barriera became violent during the episode in June 2006.  (*Id*. 61.)

The defense argues that evidence regarding Barriera's prior alcohol and drug use was relevant in ascertaining damages and was not offered as character evidence.[5]  Although neither party mentions *Cobige* v. *City of Chicago*, 651 F.3d 780, 784–85 (7th Cir. 2011), it supports defendants' position.  There the court held that it was reversible error to preclude evidence regarding the decedent's drug addiction where the plaintiff alleged wrongful death under Illinois law because the evidence refuted testimony that the decedent was a "bulwark of support and a role model." *Id*.  The court stated that under Illinois law, "surviving relatives' emotional loss

---

[4]  During recross-examination, Dr. Greenberg explained that the term "blacked out" [implied] that [Barriera] did have an episode of memory loss following intoxication."  (Dkt. 190-2, 10/19/2011 Tr. 63.)

[5]  Wilson relies on *Palmquist* v. *Selvik*, 111 F.3d 1332, 1339–1342 (7th Cir. 1997), where the Seventh Circuit affirmed the magistrate judge's ruling in an excessive force case precluding the defense from offering evidence regarding, *inter alia*, the decedent's prior use of drugs or alcohol and that the decedent had been arrested the night before for marijuana possession and driving under the influence of alcohol.  Here, however, the defendants rely on prior instances of Barriera's drug and alcohol use to show the effect of these substances on his mental illness as it pertained to his quality of life, an issue that was relevant to damages.

and familial ties" are relevant when calculating damages in a wrongful death claim. *Id*. at 785.
Thus, evidence regarding the decedent's prior drug use was not improper propensity evidence;
rather, it was "relevant to how much loss [the decedent's] estate and son suffered by her death."
*Id*.[6]

Like the plaintiff in *Cobige*, Wilson sought damages for loss of companionship and
society as a component of her wrongful death claim. These damages were premised on Wilson's
relationship with Barriera and Barriera's expected quality of life. Dr. Greenberg testified that
Barriera's drug and alcohol use could have had an adverse effect on his mental illness,
explaining that the use of such substances could exacerbate Barriera's preexisting illness. Dr.
Greenberg additionally testified that Barriera used drugs and alcohol periodically from 2003 to
2006. Barriera's drug and alcohol use was relevant to his future quality of life and the
relationship he had with family members. When this was argued to the district judge, the
defense said nothing about relevance to damages but, since the evidence would have been
admissible for this reason, it is not a sound basis for a new trial.

### 2)      Cross-Examination of Dr. Arunkumar

Wilson next argues that the defendants asked improper questions during their cross-
examination of Dr. Arunkumar. Specifically, during cross-examination, Wilson objected to

---

[6] Wilson's cites *Mankey* v. *Bennett*, 38 F.3d 353 (7th Cir. 1994), for the proposition that "unless
an expert is going to testify that a particular drug or alcohol habit would actually reduce the life
expectancy or in some other way directly impact damages, such testimony was irrelevant and
inadmissible." (Pls. Mot., at 10.) In *Mankey*, the district court barred the defense's proffered expert
witness who was going to opine on the plaintiff's life expectancy because the defense failed to timely
disclose its expert. The court affirmed on this basis. *Id*. at 359-60. To the extent that Wilson relies on
*Mankey* for the argument that defendants needed to provide expert testimony on Barriera's drug and
alcohol use, she fails to demonstrate that life expectancy or expert testimony would be relevant to the
precise issue of the quality of Barriera's life and relationships.

defense counsel's question about the effect that a blood transfusion would have on an individual with alcohol in their system. Defendants' theory was that a blood transfusion Barriera received at the hospital could have eliminated the presence of alcohol or marijuana in his toxicology reports, insinuating that Barriera had consumed drugs or alcohol shortly before the incident. During redirect examination, Dr. Arunkumar testified that traces of aspirin were still present after the blood transfusion. Dr. Arunkumar explained that if a blood transfusion diluted traces of alcohol and marijuana in Barriera's system, then it would have also diluted the aspirin levels (which was not the case), undercutting defendants' contention that Barriera was under the influence of drugs or alcohol at the time of the incident. Since Dr. Arunkumar testified that there was no alcohol or marijuana in Barriera's blood, the questions amounted to ineffective cross-examination and could not substantially have led the jury to believe that the substances were, in fact, present. Wilson's counsel also effectively rebutted defendants' theory during redirect examination. The court's decision to allow the questions was well within the scope of his discretion.

## B. Motions *In Limine* Evidentiary Rulings

Wilson filed two motions *in limine* seeking to exclude evidence that, after being shot, Barriera "gave Cummens the middle finger" and told a paramedic about a six inch throwing knife taped to his thigh.[7] Wilson argued that this evidence was irrelevant and unduly prejudicial because the proper focus was on how reasonable officers facing the same circumstances as defendants would have reacted based on what the officers knew at the time of the shooting. The

---

[7] Plaintiff characterizes the object as a butter knife.

court denied both motions *in limine* and permitted defendants to elicit testimony regarding these facts at trial.

"Excessive force claims, including deadly force claims, resulting from a seizure are analyzed under the Fourth Amendment's objective reasonableness standard." *Deering* v. *Reich*, 183 F.3d 645, 650 (7th Cir. 1999) (citing *Graham* v. *Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "Reasonableness depends on the information the officer possesses prior to and at the immediate time of the shooting [and] the knowledge, facts and circumstances known to the officer at the time he exercised his split-second judgment as to whether the use of deadly force was warranted." *Deering*, 183 F.3d at 650 (internal quotation marks omitted). "Reasonableness is evaluated from the officer's perspective at the time, not with 20/20 hindsight." *Id*. As stated in *Sherrod* v. *Barry*, 856 F.2d 802, 804–05 (7th Cir. 1988) (*en banc*),

> When a jury measures the objective reasonableness of an officer's actions, it must stand in *his* shoes and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to that situation. Knowledge of facts and circumstances gained after the fact (that the suspect was unarmed) has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment. Were the rule otherwise, as the trial court ruled in this instance, the jury would possess more information than the officer possessed when he made the crucial decision.

The Seventh Circuit in *Sherrod* cautioned that its holding was not a "black-letter rule" and that after-the-fact evidence could be used to test a witness's credibility, namely the ability of the witness to "observe, remember, or narrate," and could also be used to impeach a witness. *Id*. at 806. Thus, according to *Sherrod*, admitting evidence such as the post-shooting facts in this case at bar is proper if elicited to test witness credibility or accuracy.

8

Defendants argue that the obscene gesture and the second knife were relevant to whether Barriera had been acting aggressively towards the defendant officers immediately before the shooting as opposed to Wilson's version that he had been non-confrontational. They cite *Common* v. *City of Chicago*, 661 F.3d 940 (7th Cir. 2011). There, the defendant officer testified that he told the plaintiff's decedent and two of his companions to show their hands. *Id*. at 942–43. The two companions complied, but the decedent failed to raise his hands, an act that evoked the officer's reaching for his gun and fatally shooting him. *Id*. at 943. At trial, the court allowed evidence that the medical examiner located five small plastic bags containing cocaine that had likely been in the decedent's mouth when he was shot. *Id*. On appeal, the plaintiff, based on *Sherrod*, challenged the introduction of evidence regarding the drugs found after the fact. *Id*. at 943–44. The Seventh Circuit ruled that the evidence was relevant to whether the decedent complied with the defendant's request to place his hands in the air as plaintiff's witnesses testified or whether, as the officers testified, he turned and walked away from the officers and then grabbed for the defendant officer's wrist, pulling forward as he reached for his gun. *Id*. at 945–46.

Here, unlike in *Common*, the post-incident evidence does not clarify what Barriera said, did, or observed but at best reflects his state of mind. That Barriera was disrespectful after the trauma of being shot could have had little bearing on how he felt beforehand. As for the knife, since the problem addressed in *Sherrod* is directly at issue, there is little to commend admission of evidence of the second knife, which gave the jury more information than the officers had at the time of the encounter. Still, the knife discovered after the fact was not the knife that the officers testified was in Barriera's hand when he lunged at them before he was shot. Unlike

9

*Sherrod*, where the officers had no information that the victim was unarmed and thus considered him potentially armed, evidence regarding the later-discovered knife did not bear on whether Barriera lunged at the defendant officers while holding a knife. Ultimately the jury had to resolve that disputed question. Introducing evidence of the second knife does not warrant a new trial because it provided no more information than the officers had about the central issue of whether Barriera lunged at them with a knife in his hand. As such, the court concludes that this evidence did not have substantial influence over the jury such that a new trial is merited.

### C.      Cross-Examination of Jerome

Wilson argues that the court erred by sustaining objections to questions asked on Jerome's cross-examination regarding Tactical Response Reports ("TRRs") and any discipline he faced as a result of this lawsuit.

#### 1)      TRRs

During cross-examination, Wilson attempted to question Jerome regarding inconsistencies in the TRRs that were completed by each of the defendant officers. The court did not allow it. Wilson does not explain in her motion, however, the error in the court's ruling. On reply she states that the basis for the ruling was hearsay but the questions were directed at Jerome's consciousness of guilt and thus excepted from the hearsay rule.[8] *See, e.g., United States* v. *Shorter*, 54 F.3d 1248, 1260 (7th Cir. 1995) (rejecting the defendant's argument that a

---

[8] Defense counsel did not articulate a basis for this objection, and Wilson's counsel did not inquire into the basis for the objection. *See* Fed. R. Evid. 103(a)(1) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial rights of the party and (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context[.]"). In her post-trial motion, Wilson argues that the court sustained the objection on hearsay grounds. The court will examine Wilson's post-trial argument because it appears from the context of the question that the court sustained the objection based on hearsay.

letter was hearsay as it was admissible for the non-hearsay purpose of demonstrating consciousness of guilt). The record reflects that the trial judge sustained an objection to Wilson's counsel's question asking Jerome about the time the watch commander's signature appeared on his second TRR.[9] Wilson (for the first time) also argues that the TRRs fall under the business record exception to the hearsay rule because this is a civil case. Federal Rule of Evidence 803(8) permits the introduction of police reports in civil cases. *See Truesdale* v. *Klich*, 03 C 8209, 2006 WL 1460043, at *3 (N.D. Ill. May 23, 2006) ("In a civil case, police reports may be admissible as a public record or business record."); *Lockhart ex rel. Lockhart* v. *Archer*, No. 03 C 3760, 2004 WL 1459338, at *1 (N.D. Ill. June 25, 2004) ("[B]ecause this is a civil case, the police report would be admissible under Federal Rule of Evidence 803(8)."); *Roth* v. *Nat'l R.R. Passenger Corp.*, No. 97 C 6503, 1999 WL 1270706, at *1 (N.D. Ill. Dec. 29, 1999) (noting that police reports were admissible pursuant to Federal Rule of Evidence 803(8), while also noting that they could be admissible as business records under Federal Rule of Evidence 803(6)). (Certainly information such as the time the watch commander signed a document would be within this exception.) Counsel also asked Jerome questions about Cummens's report. The court excluded it as hearsay because Jerome could not testify as to Cummens's consciousness of guilt.

---

[9] Those inconsistencies included the fact that Hurman characterized Barriera as having a knife, while Cummens provided that Barriera was a passive resister. Wilson maintained that Jerome adopted the content of Hurman and Cummens's TRRs because he signed off on these reports. Simply reviewing and approving reports prepared by other police officers, however, does not mean that Jerome adopted the content of those reports as his own. *Cf. United States* v. *Severson*, 49 F.3d 268, 272 (7th Cir. 1995) ("A third party's characterization of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.") (internal quotation marks omitted).

Wilson does not argue that the trial judge improperly refused to admit the exhibits into evidence. Rather, she takes exception to the limits placed on who could testify about them. Regardless of whether the police reports fall under the hearsay exceptions of Rule 803(6) and/or Rule 803(8), the material entered into those reports by other officers presents an additional layer of hearsay. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Accordingly, the court did not err in precluding this line of cross-examination.

### 2) Jerome's Disciplinary Ramifications

Wilson also contends that the court erred by precluding her from questioning Jerome about the disciplinary ramifications he faced as a result of this lawsuit. Wilson contends that this question properly sought to elicit bias. Defendants objected to the question at trial arguing that it was subject to a motion *in limine*. The record does not reflect, however, that defendants moved to exclude evidence of repercussions on Jerome's employment as a result of the lawsuit or that the court ruled *in limine*. Had the questions been permitted, Jerome's response might have conveyed to the jury that Jerome believed he was acting with impunity because he thought there would be no repercussions. Or it might have conveyed a motive to lie because he thought he would be disciplined. Although this court would likely have permitted the questions, the omission of this line of questioning, which would likely have elicited an "I don't know" response, does not persuade this court that a new trial is warranted.

### D. Language Used When Discharging Cummens in Front of the Jury

After Wilson's case-in-chief concluded, the court granted the defense's motion for judgment as a matter of law as to Cummens under Federal Rule of Civil Procedure 50. Wilson's

counsel subsequently requested that the court exclude Cummens from the courtroom as he was no longer a party to the case. The court instructed the jury:

> Based upon the Court's determination, at this point Officer Cummens will no longer be a defendant in this case. And that officer is free to exit the courtroom based upon prior motions . . . I would inform the ladies and gentlemen of the jury in [sic] that the Defendant Cummens has been discharged from this lawsuit, you are no longer to consider any potential liability on his part in this lawsuit.

(Dkt. 190-3, 10/24/2011, Tr. 22.) Wilson argues that the court's instructing the jury that it dismissed Cummens based upon its "determination" was prejudicial.

Wilson relies on *Vaughn* v. *Willis*, 853 F.2d 1372, 1376 (7th Cir. 1988); this case, however, undercuts her argument because the Seventh Circuit held that the district court properly explained to the jury why several co-defendants were no longer part of the case after granting a directed verdict in their favor. The plaintiff was an inmate who brought a § 1983 claim and a state law negligence claim against a prison guard and his supervisors alleging that the defendant prison guard aided and abetted other prisoners in assaulting the plaintiff. *Id*. at 1373–74. After granting the directed verdict, the trial judge told the jury, "I am entering judgment in favor of the supervisory defendants because there is no evidence sufficient to establish their liability that has been presented." *Id*. at 1375. The Seventh Circuit held that this instruction employed "the favored practice in this circuit" by "explain[ing] to the jury why the claim against the supervisory defendants no longer was before them." *Id*. at 1376. Similar to *Vaughn*, the court's instruction properly informed the jury that Cummens was no longer part of the case.

**E.**      **Jury Instructions**

Wilson contends that the court erred in giving jury instructions (1) setting forth the elements of her wrongful death claim and (2) defining willful and wanton conduct.[10]  A party requesting a new trial because of an erroneous jury instruction must show that the instruction "did not adequately state the law and that the error was prejudicial to [that party] because the jury was likely to be confused or misled."  *Boyd* v. *Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004).  In reviewing the propriety of a jury instruction, the court considers the instructions as a whole to determine whether "they correctly and completely informed the jury of the applicable law."  *Bogan* v. *City of Chicago*, 644 F.3d 563, 568 (7th Cir. 2011) (internal quotation marks omitted).

### 1)      Wrongful Death Instruction

The threshold inquiry is to determine whether the court's wrongful death instruction properly stated the law.  Under the Illinois Wrongful Death Act, "the representative's wrongful-death action is derived from the decedent's cause of action and is limited to what the decedent's cause of action against the defendant would have been had the decedent lived."  *Williams* v. *Manchester*, 888 N.E. 2d 1, 11-12, 228 Ill. 2d 404, 320 Ill. Dec. 784 (Ill. 2008).  The statutory requirement that the decedent have suffered an injury confers a right of action on the decedent's representative while general tort principles shape the remedy.  *Id.* at 12.  Because Wilson seeks damages from Hurman in his capacity as a Chicago police officer, the Illinois Tort Immunity Act applies and Wilson must also show that Hurman's actions were willful and wanton.  *See* 745 ILL. COMP. STAT. 10/2-202 ("A public employee is not liable for his act or omission in the execution

---

[10]  Wilson challenges the wrongful death and willful and wanton conduct jury instructions; however, she only requested a new trial for her excessive force claim.  Because Wilson takes issue with the wrongful death and willful and wanton conduct jury instructions, the court will analyze whether she is also entitled to a new trial on her wrongful death claim.

or enforcement of any law unless such act or omission constitutes willful or wanton conduct.").

The court instructed the jury that Wilson's claim for wrongful death was that Hurman "[s]hot the decedent, Raul Barriera, *without justification* in that he lacked a reasonable belief that such force was necessary to prevent imminent death or great bodily harm to himself or others." (emphasis added). This is similar, although not identical, to her claim of excessive force under § 1983. *See*, *e.g.*, *Carter* v. *Chicago Police Officers*, 165 F.3d 1071, 1080–81 (7th Cir. 1998) (an excessive force claim "required the jury to ascertain whether the officers acted in an objectively reasonable manner," while a wrongful death claim "required proof that the officers acted willfully and wantonly . . . [*i.e.*,] "a course of action which shows an actual or deliberate intention to cause harm, or if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.") Wilson argues that Hurman had the burden to prove justification (*i.e.*, self defense) because it is an affirmative defense. Moreover, Wilson argues, defendants never argued or pleaded self-defense; therefore, she was entitled to judgment as a matter of law on her willful and wanton claim.

In general, under Illinois law, the burden of demonstrating justification of force in a civil case is on the party invoking the defense. *See*, *e.g.*, *Davis* v. *Lane*, 814 F.2d 397, 400–01 (7th Cir. 1987) (reversing when the jury instruction for battery placed the burden on the plaintiff to prove the defendants acted without justification); *Winn* v. *Inman*, 457 N.E.2d 141, 145, 119 Ill. App. 3d 836, 75 Ill. Dec. 351 (Ill. App. Ct. 1983) (reversing for new trial where jury instruction for battery put burden on plaintiff to prove that the defendant acted without provocation or cause). Wilson cites no case under the Tort Immunity Act, however, that places the burden of proof on the public employee. *Winn*, on which she does rely, did not concern a public employee

16

and dealt only with the elements of battery. The elements of battery, unlike the elements of

willful and wanton conduct, do not include lack of justification. *See* RESTATEMENT (SECOND) OF

TORTS § 18 (1965).[11] By contrast, the Illinois pattern jury instructions place the burden on the

plaintiff to prove "that the willful and wanton conduct of the defendant was a proximate cause of

[the injury to the plaintiff] . . . ." ILL. PATTERN JURY INSTRUCTIONS (CIVIL) No. B21.02.02 [13],

[16] (2011 ed.). Further, the pattern willful and wanton instructions nowhere indicate that the

plaintiff's proof is limited to proof of intentional or reckless conduct while the defendant has the

burden to show justification. *See id.* Nos. 20.01[11] - [20]. This is consistent with the burden of

proof of excessive force under the Eighth Amendment. *See Davis*, 814 F.2d at 401 ("To prevail

on an eighth amendment claim, a plaintiff bears the burden of proof on every element, including

the burden of proving that the defendants acted *without* justification."). For these reasons, the

court concludes that the trial judge correctly applied Illinois law by placing the burden of proof

on the plaintiff to show lack of justification.

### 2) Willful and Wanton Conduct Instruction

Wilson also contends that the court incorrectly defined willful and wanton conduct under

Illinois law. The court instructed the jury, "When I use the expression 'willful and wanton

conduct' I mean a course of action which shows an utter indifference to or conscious disregard

for the safety of others." Wilson contends that Hurman's admission that he intentionally shot

---

[11] (1) An actor is subject to liability to another for battery if
　　　　(a) he acts intending to cause a harmful or offensive contact with the person of
　　　　the other or a third person, or an imminent apprehension of such a contact, and
　　　　(b) an offensive contact with the person of the other directly or indirectly results.

Barriera required the court to give the full Illinois pattern instruction defining willful and wanton conduct:

> When I use the term "willful and wanton conduct," I mean a course of conduct which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety [or] the safety of [Raul Barriera].

*See* ILLINOIS PATTERN JURY INSTRUCTIONS (CIVIL) No. 14.01 (2011 ed.); *Burke* v. *12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 532, 148 Ill. 2d 429, 170 Ill. Dec. 633 (Ill. 1992) (internal quotation marks omitted) (willful and wanton conduct defined as conduct "with actual intention *or* with a conscious disregard or indifference for the consequences when the known safety of others persons was involved.") (emphasis added). Wilson argues that she was not required to prove recklessness where Hurman's conduct was admittedly intentional, but the court's instruction required it. As Wilson sees it, conduct that is intentional (as the shooting of Barriera admittedly was) is necessarily willful and wanton; thus, the court gave an improper instruction.

Willful and wanton conduct can be either intentional or reckless. *Kirwan* v. *Lincolnshire-Riverwoods Fire Prot. Dist.*, 811 N.E.2d 1259, 1263, 349 Ill. App. 3d 150, 285 Ill. Dec. 380 (Ill. App. Ct. 2004). The Illinois Supreme Court has called willful and wanton conduct "a hybrid between acts considered negligent and those found to be intentionally tortious." *Poole* v. *City of Rolling Meadows*, 656 N.E. 2d 768, 771, 167 Ill. 2d 41, 212 Ill. Dec. 171 (Ill. 1995); *see also Kirwan*, 811 N.E.2d at 1263 ("Intentional willful and wanton conduct is committed with actual or deliberate intent to harm [while] reckless and willful and wanton conduct falls in between actual intent and mere negligence.") (internal quotation marks omitted). Unintentional willful and wanton conduct, by contrast, is reckless conduct. *Ziarko* v. *Soo Line R.R.*, 641

18

N.E.2d 402, 406, 161 Ill. 2d 267, 204 Ill. Dec. 178 (Ill. 1994). Although the pattern instruction

explains the standard for unintended conduct, it does not inform the jury that intentional conduct

may be justified as well as unjustified. Under the Illinois Criminal Code a person

> . . . is justified in the use of force which is intended or likely to cause death or great
> bodily harm only if he reasonably believes that such force is necessary to prevent
> imminent death or great bodily harm to himself or another, or the commission of a
> forcible felony.

720 Ill. Comp. Stat. 5/7-1(a). This is not at all what Wilson urges, but at least she is correct

that deliberate intention to harm should not have been omitted from the instruction. *See Ziarko,*

641 N.E.2d at 408 (citing Ill. Pattern Jury Instructions (Civil) No. 14.01, Notes on Use

(3d Ed. 1992)) ("The IPI Civil jury instructions advise trial judges that the first bracketed phrase

regarding 'actual or deliberate intention to harm' 'should be omitted unless a deliberate intention

to harm is alleged and supported by evidence sufficient to make a submissible case.'").[12] In light

of Hurman's admission that he acted intentionally, the court should have used Wilson's

instruction indicating that the jury could find willful and wanton conduct where Hurman's

conduct was intentional. That would have, at least, permitted the jury to find that the conduct

was willful and wanton because it was intentional.

As indicated above, however, such a verdict would have been contrary to law because

there is no question that the defendant officers would have been justified in killing Barriera if

these facts were proved. A better instruction for this case would have been this:

> When I use the term "willful and wanton conduct," I mean a course of conduct
> which, if not intended, shows an utter indifference to or conscious disregard for the

---

[12] The current version of the notes on use for Illinois Pattern Jury Instruction (Civil) 14.01
provide that "[t]he first bracketed phrase should be used only when a deliberate intention to harm is
alleged and is supported by evidence sufficient to make a submissible case." Ill. Pattern Jury
Instructions (Civil) No. 14.01, Notes on Use (2011 ed.)

safety of Raul Barriera; or, if intended, shows that the defendant reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or another person.

Since Wilson did not propose this instruction, the question is only whether the erroneous instruction likely confused or misled the jury such that Wilson was prejudiced. It is true that the jury could have found that Hurman's conduct was not reckless while also finding that deadly force was not necessary to prevent death or bodily harm. But it could not have found that Hurman's use of force was reasonable and also find his conduct willful and wanton. *See Carter*, 165 F.3d at 1081 ("It is entirely possible that unreasonable conduct may not rise to the level of willful and wanton conduct."). Where the jury found the force used was reasonable under the Fourth Amendment claim, and since willful and wanton conduct is a more demanding standard than reasonable force, this court is persuaded that any confusion or misleading of the jury resulting from the incomplete willful and wanton conduct instruction did not prejudice Wilson.

## II.    Motion for Judgment as a Matter of Law

Wilson argues, as stated above, that she was entitled to judgment as a matter of law at the close of the evidence because willful and wanton conduct was established once Hurman admitted his conduct was intentional.[13] As set out above, this court rejects this argument completely and agrees with the trial judge that the case had to be submitted to the jury. *See Chelios* v. *Heavener*, 520 F.3d 678, 693 (2008) (internal quotation marks omitted). "Whether an officer acted [willfully and wantonly] is normally a question of fact to be determined by the jury." *Id.*

---

[13] Under Federal Rule of Civil Procedure 50, a court can enter judgment against a "party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Schandelmeier-Bartels* v. *Chicago Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (quoting Fed. R. Civ. P. 50(a)).

(internal quotation marks omitted); *Carter* v. *Simpson*, 328 F.3d 948, 951 (7th Cir. 2003)

("Whether conduct is willful and wanton is a factual question.").

## CONCLUSION

Wilson's motion for a new trial and judgment as a matter of law [Dkt. 190] is denied.


Dated: January 24, 2013                    Enter: _____

                                           JOAN HUMPHREY LEFKOW
                                           United States District Judge